# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Valente Nevarez (#2018-0827266), | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 3319 |
| v. | ) |
| | ) Judge Marvin E. Aspen |
| Sweeney, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C § 1983, Valente Nevarez ("Plaintiff"), currently a Cook County Jail detainee, challenges the constitutionality of his arrest and detention following a traffic stop on April 14, 2014, and claims that he was subjected to excessive force, falsely arrested, and denied medical attention. Defendants, Chicago Police Officers Alexander Franco, Robert Perales, Adam Sweeney, and Migdaliz Vazquez (collectively "Defendants"), moved for summary judgment based principally on *Heck v. Humphrey*, 512 U.S. 477 (1994). Because the Court agrees that Plaintiff's excessive force and false arrest claims are *Heck*-barred, and for the other reasons stated below, Defendants' motion is granted in its entirety.

## I.   Northern District of Illinois Local Rule 56.1

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (Dkt. 71.)  The notice explained how to respond to Defendants' summary judgment motion and Rule 56.1 Statement and cautioned Plaintiff that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1.

As contemplated by the Local Rule, Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts ("Def. SOF") with their summary judgment motion. Plaintiff did not respond to Defendants' statement of facts or submit an additional statement of undisputed facts; he did, however, submit a response to the motion (Dkt. 100), which consists of 23 pages that list and summarize in bullet-point fashion the contents of various documents produced in discovery. None of those documents are exhibited to the response for the Court's review.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Because Plaintiff has failed to properly respond to Defendants' Rule 56.1 Statement of Undisputed Material Facts, the Court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Within the boundaries of Plaintiff's admissions, however, he Court will, consistent with Plaintiff's *pro se* status, construe his submission in the light most favorable to him, to the extent that he has pointed to evidence in the record or could properly testify himself about the matters asserted. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602.

## II. Factual Background

On April 14, 2014, Plaintiff encountered Officers Franco and Sweeney near Cermak and California Avenue. (Def. SOF Fact ¶¶ 2, 5, 48-49.) Plaintiff was arrested and transported to the 10th District police station. (*Id.* at ¶¶ 15 and 55.) At the police station Plaintiff underwent standard

2

field sobriety testing and registered a blood alcohol concentration above the legal limit. (*Id.* at ¶¶ 16, 31.) Plaintiff was placed in a holding cell in the bullpen area of the station. (*Id.* at ¶¶ 33 and 55.) Defendants entered the holding cell and a physical altercation with Plaintiff ensued. (*Id.* at ¶¶ 33-42 and 56-65.) Criminal proceedings followed, and Plaintiff was convicted via a bench trial of aggravated driving under the influence with a blood alcohol concentration over 0.16, driving on a revoked or suspended license, aggravated battery to a peace officer, and resisting arrest. (*Id.* at ¶¶ 79-80.) These convictions were affirmed on appeal and remain valid. (*Id.* at ¶¶ 79-80.)

**Defendants' Version of the Arrest and Altercation**

On April 14, 2014, Officer Franco observed a Toyota Sienna speeding down California Avenue left of the center lane. (*Id.* at ¶¶ 5-6.) He saw the vehicle attempt but fail to stop for a red light at the intersection with Cermak Avenue and ultimately stop in the middle of the intersection instead. (*Id.*) The vehicle then turned onto Cermak Avenue where Officer Franco, along with his partner, Officer Sweeney, curbed the vehicle. (*Id.* at ¶¶ 7-8.) Officer Franco approached the vehicle and found that Plaintiff was the driver; there were no passengers in the vehicle. (*Id.* at ¶ 9.) Officer Franco smelled alcohol and saw open beer bottles in the car. (*Id.*) Officers Perales and Officer Vasquez were called to assist Officers Franco and Sweeney. (*Id.* at ¶ 12.) They detained Plaintiff and brought him to the 10th District police station on suspicion of driving under the influence. (*Id.* at ¶ 15.) At the station Plaintiff was given a horizontal gaze nystagmus test ("HGN"), a one leg stand test, a walk and turn test, and a breath analysis test. (*Id.* at ¶ 16.) Plaintiff failed the first three tests, and the last revealed a blood alcohol concentration of 0.181. (*Id.* at ¶¶ 18, 22, 24, and 31.)

Plaintiff was placed in a holding cell within the bullpen area. SF at ¶33. Plaintiff then began causing a disturbance, including kicking and hitting the cell door, as well as hitting his head on the

3

door. (*Id.* at ¶ 33.) Officers Franco and Perales opened the door to speak with Plaintiff. (*Id.* at ¶ 34.) Plaintiff attacked Officer Franco, lunging and trying to punch Officer Franco. (*Id.* at ¶ 35.) Officers Franco, Perales, and Sweeney attempted to restrain Plaintiff. (*Id.* at ¶¶ 36-37.) Plaintiff continued to try and punch the officers and also spit in Officer Franco's face and mouth. (*Id.* at ¶¶ 38, and 40-41.) Plaintiff caused lacerations to Officer Franco and Officer Sweeney, who were both taken to a hospital for treatment after the incident. (*Id.* at ¶¶ 40, 43.)

**Plaintiff's Version of the Arrest and Altercation**

Plaintiff's version of what occurred on April 14, 2014, differs greatly from Defendants. According to Plaintiff, he was merely walking near his car with an open beer bottle when he saw police officers. (*Id.* at ¶¶ 48-50.) The officers stopped Plaintiff before he could enter his vehicle to leave the area and obtain cocaine. (*Id.* at ¶¶ 52-53.) The officers placed Plaintiff in handcuffs and transported him to the police station. (*Id.* at ¶¶ 55.) When Plaintiff asked what he was being charged with, Officer Franco replied, "shut the fuck up." (*Id.* at ¶¶ 55-56.) Plaintiff in turn told Officer Franco to "shut the fuck up", which caused Officer Franco to come into Plaintiff's holding cell. (*Id.* at ¶ 56.) Officer Vasquez grabbed Plaintiff's arm or hand. (*Id.* at ¶¶ 57-58.) Officer Franco began to choke Plaintiff, causing Plaintiff to grab Officer Franco's hands to try and remove them. (*Id.*) Officer Franco then kneed Plaintiff in the groin, causing Plaintiff to "splur" on Officer Franco. (*Id.* at ¶ 59.) Officer Franco then started hitting Plaintiff in the head with handcuffs. (*Id.* at ¶ 60.) Plaintiff never hit or punched the Defendants. (*Id.* at ¶ 61.)

**The Events After the Altercation**

The parties agree about what happened following the altercation. Defendants ultimately handcuffed Plaintiff in the holding cell. (*Id.* at ¶¶ 42 and 65.) Plaintiff testified at his deposition that his injuries at that point consisted of bruises on his head and soreness on his butt cheeks and

4

back. (*Id.* at ¶¶ 66-67.) He testified that he was not bleeding and that he had no other injuries from the altercation. (*Id.*) Plaintiff testified that he then never saw Defendants again on April 14, 2014; the Defendants attested to the same. (*Id.* at ¶ 70.) Plaintiff asked an unknown, non-party lieutenant and an unknown, non-party lock up keeper, for medical attention. (*Id.* at ¶ 68.) Plaintiff expressly testified that he never asked any one of the Defendants for any type of medical attention; the Defendants again attested to the same. (*Id.* at ¶ 69. Plaintiff was in pain for two days, followed by "a few more" days of "soreness", but functioned as normal; five days following the incident, while detained, he received ibuprofen. (*Id.* at ¶ 72.) Plaintiff never subsequently saw a doctor for his injuries because, in his words, "when do you see a doctor for bruises[.]" (*Id.* at ¶ 71.)

### Plaintiff's Criminal Convictions

In Plaintiff's subsequent criminal proceeding, Officers Franco and Perales testified to Defendants' version of events. (*Id.* at ¶¶ 5-44.) Plaintiff testified to his version of events. (*Id.* at ¶¶ 45-72.) Following the testimony, Plaintiff was convicted of aggravated driving under the influence with a blood alcohol concentration over 0.16, driving on a revoked or suspended license, aggravated battery to a peace officer, and resisting arrest. (*Id.* at ¶¶ 79-80.) The trial court found that the following factual basis, stemming from the Officers' testimony, supported the convictions:

> Court heard the evidence. I find the police officers to be credible, compelling beyond a reasonable doubt. I don't believe Mr. Nevarez. He did have some injuries he suffered. They were doing emergency takedown because he's swinging on the police and spitting at them and acting the way it was described. Also banging his head on the cell door as well. He's absolutely driving and no license to drive and obviously intoxicated. Be a finding of guilty as to all counts on both charges. All charged, both indictments.

(*Id.* at ¶¶ 73-78.) The convictions were affirmed on appeal. SF at ¶¶ 79-80.

## III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his or] her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## IV. Analysis

Following initial review of Plaintiff's complaint, the Court allowed Plaintiff to proceed on three claims: (1) excessive force; (2) false arrest; and (3) denial of medical attention. Defendants have moved for summary judgment on three grounds: (1) Plaintiff's false arrest and excessive force claims are inconsistent with his convictions and thus are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiff's medical attention claim fails for lack of personal involvement and on the merits; and (3) even if Plaintiff had established a constitutional violation, Defendants are entitled to qualified immunity. For the following reasons, Defendants' motion for summary judgment is granted, and this case is dismissed in its entirety.

6

## A. Plaintiff's Excessive Force Claim is *Heck*-Barred.

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 action for damages is unavailable if success would necessarily imply that a conviction or sentence is invalid unless the underlying conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid on habeas review. 512 U.S. 477, 486-87 (1994); *McDonough v. Smith*, — S.Ct. —, No. 18-485, 2019 WL 2527474, at *5 (U.S. June 20, 2019) ("to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must first "prove that his conviction had been invalidated in some way.") (citing *Heck*, 512 U.S. at 486).

Defendants argue that *Heck* bars Plaintiff's § 1983 excessive force claim because the factual predicate for the claim is directly at odds with his criminal convictions for aggravated battery to a peace officer and resisting a peace officer, which have not been invalidated. Defendants more specifically contend that Plaintiff's position that Defendants were the aggressors and that Plaintiff never purposefully struck the officers directly conflicts with his convictions. The Court agrees.

As set forth above, Plaintiff was found guilty following a bench trial of, among other crimes, aggravated battery of a peace officer and resisting a peace officer. His convictions were affirmed on appeal and remain valid. In Illinois, "[a] person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knows the individual battered to be . . . [a] police officer . . . performing his or her official duties." 720 ILCS § 5/2-12.3.05(d)(4)(i). To be guilty of aggravated battery to a police officer, Plaintiff must have (1) known that the officers were police officers performing their official duties; and (2) intentionally or knowingly; (3) voluntarily; (4) without legal justification; (5) caused bodily harm to them. *See*

7

*Tolliver v. City of Chicago*, 820 F.3d 237, 242 (7th Cir. 2016). It also is unlawful to "knowingly resist[] or obstruct[] the performance of one known . . . to be a [police] officer" acting in his or her official capacity. 720 Ill. Comp. Stat. § 5/31-1(a).

When considering whether *Heck* bars Plaintiff's excessive force claim, the Court "must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). The Court's analysis of the factual basis for the claim is not limited to "the formalistic language in the original [criminal] complaint" but is more expansive, including the factual basis for the conviction. *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016).

An excessive force claim is not necessarily inconsistent with a conviction for battery of a peace officer or resisting arrest, even if an individual has earlier initiated contact with an officer or resisted arrest. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). However, a "version of events [that] negates the mental state necessary to support [a] conviction for aggravated battery of a peace officer . . . necessarily implies the invalidity of [a § 1983 plaintiff's] conviction." *Tolliver*, 820 F.3d at 244; *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (holding that excessive force claim "is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction").

Thus, while a plaintiff need not necessarily admit that the police officers' story regarding his behavior is correct, he may not espouse a version of events that is inconsistent (even by implication) with a criminal conviction that has not been invalidated. *See Tolliver*, 820 F.3d at 244; *see also Moore v. Mahone*, 652 F.3d 722, 723-24 (7th Cir. 2011) (noting that plaintiff need not "confess" to any misconduct and may "remain 'agnostic' in his civil case about the findings in

8

the criminal [] proceeding," but *Heck* bars even claims that "necessarily imply" invalidity of conviction).

Here, far from remaining "agnostic" as to the findings in his criminal case, Plaintiff has espoused and adhered to a version of events that paints him as a helpless and blameless innocent victim brutalized by police officers merely for asking a simple question – "what were the charges". Plaintiff testified at his deposition in this case (similarly to his testimony at trial) that the officers initiated all force against him after he inquired as to the charges and that any physical contact he made with the officers was incidental to—and, more precisely, *caused by*—the force they exerted on him. For example, his testimony that he "splurged" on Officer Franco because the officer kneed him in the testicles, and his testimony that he grabbed Officer Franco's hands to remove them because the officer was choking him. He specifically disclaimed any purposeful hitting of Defendants. Then, in his summary judgment response, Plaintiff quoted and juxtaposed excerpts from the officers' testimony and police reports, noting what he believes are countless inconsistencies and improbabilities in their accounts. Although he did not explicitly proclaim his factual innocence in the response submission, its plain import is that the officers are not credible and he did not commit the crimes for which he was convicted.

This depiction of events and posture at summary judgment are irreconcilably inconsistent with Plaintiff's convictions for aggravated battery to a police officer and resisting a police officer. The factual basis for those convictions, *i.e.,* the officers' trial testimony, which was credited by the trial court, establishes that Plaintiff was the aggressor. Specifically, as described above, the officers testified that Plaintiff lunged for and attempted to punch them when they entered his cell, continued attempting to punch them as he was being restrained, and purposefully spit in Officer Franco's face. Given that the two versions of events are irreconcilable, and that even most recently

9

in his response brief Plaintiff attempts to discredit Defendants, *Heck* bars Plaintiff's excessive force claim. *See Moore*, 652 F.3d at 724-25 (explaining that implicit denial of facts related to underlying offense includes plaintiff portraying himself "as a lamb—the victim of a gratuitous, brutal attack," to "strengthen [his] claim of excessive force" and warrants dismissal without prejudice under *Heck*); *Helman*, 742 F.3d at 762 (holding that plaintiff's contention that he did not attempt to draw his weapon until after shots were fired at him could not survive summary judgment because it was inconsistent with his conviction for resisting arrest); *Teague v. Armstead*, 82 F. Supp. 3d 817, 827 (N.D. Ill. 2015) ("The factual basis for the relief [the plaintiff] seeks is, given *Heck*, implausible, for it is that the plaintiff was the victim of an utterly unprovoked assault, and while that conceivably is true, it is barred by *Heck*."); *see also Johnson v. Reiter*, No. 14 C 1522, 2015 WL 6674531, at *4-5 (N.D. Ill. Oct. 30, 2015) (collecting cases holding that *Heck* bars excessive force claims that are inconsistent with underlying state court convictions).

Similarly, to the extent that Plaintiff describes that his only physical contact with the officers was accidental, he cannot prevail because his aggravated battery conviction means that the state court necessarily found that his actions were voluntary and either knowing or intentional. *See Tolliver*, 820 F.3d at 243.

Accordingly, Plaintiff's excessive force claim is dismissed without prejudice as *Heck*-barred.

    **B.**    **Plaintiff's False Arrest Claim is *Heck*-Barred.**

Defendants argue that *Heck* bars Plaintiff's § 1983 false arrest claim because the factual predicate for the claim is directly at odds with his criminal convictions for DUI, which have not been invalidated. Defendants more specifically contend that Plaintiff's position that he was walking with an open beer can next to his car – not in the vehicle or driving it – when arrested,

10

directly conflicts with the trial court's express factual findings that Plaintiff was "absolutely driving" while "obviously intoxicated" to support the DUI conviction. The Court agrees.

As in the context of excessive force claims, *Heck* does not automatically preclude a claim of false arrest. "The fact that there is ultimately sufficient evidence to convict a criminal defendant does not always mean that there was probable cause to arrest him in the first place." *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 843 (N.D. Ill. Jan. 4, 2000). Nevertheless, in cases like this, where the false arrest claim rests on an assertion of innocence, the false arrest claim implicitly calls into question the validity of the Plaintiff's criminal conviction. *See, e.g.*, *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("Okoro adhered steadfastly to his position that . . . he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit,"); *Gordon v. Miller*, 528 Fed. App'x 673, 674 (7th Cir. 2013) (where plaintiff did not attack his arrest for driving under the influence by focusing on a lack of probable cause, but rather contended that he never drove the pickup, his allegations were inconsistent with his conviction and his claims were *Heck*-barred); *Rollins v. Willett*, 770 F.3d 575, 576 (7th Cir. 2014) ("[S]uppose a defendant convicted of possessing illegal drugs found on his person sued the officer who had found the drugs, alleging that the officer planted them. If he won the suit, it would imply the invalidity of his drug conviction. The suit would therefore be barred by the rule of *Heck v. Humphrey*."). In addition, "where the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by *Heck*." *Szach v. Vill. of Lindenhurst*, No. 14 C 7441, 2015 WL 3964237, at *6 (N.D. Ill. June 25, 2015) (collecting cases); *see also Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013) (*Heck* barred false arrest claim where the plaintiff was convicted of "the very behavior that would have constituted probable cause for her arrest"); *Claxton v. Byrne*, No. 13 C 2686, 2013

WL 5770526, at *3 (N.D. Ill. Oct. 24, 2013) (*Heck* barred false arrest claim when the plaintiff was convicted of carrying a loaded firearm in public but alleged in a § 1983 action that the arresting officers fabricated evidence showing that he was carrying a gun because these "allegations amount to a claim that he is innocent of the crime for which he was convicted").

Here Plaintiff's false arrest claim rests on his assertion that he was never driving or even inside his car when he encountered Defendants, which is plainly likewise an assertion of his factual innocence of a DUI charge. As in the above-cited cases, his false arrest claim thus constitutes a collateral attack on his conviction, hence, "*Heck* kicks in and bars his civil suit." *Okoro*, 324 F.3d at 490.

For these reasons, Plaintiff's false arrest claim is dismissed without prejudice as *Heck*-barred.

### C. Plaintiff's Denial of Medical Attention Claim Fails as a Matter of Law

Defendants lastly argue that they are entitled to summary judgment on Plaintiff's medical care claim. They contend that they acted reasonably given that Plaintiff did not ask them for medical care, that they were unaware of his purported need for medical attention, and that his injuries were not serious. In his response, Plaintiff, consistent with his deposition testimony, does *not* suggest that he ever asked any Defendant for medical attention. Instead, his position appears to be that the Defendants should have known he needed medical care given the appearance of his injuries. He directs the Court's attention to photographs of his scrapes and bruises that were exhibited to Defendants' LR 56.1 Statement of Facts, and which the Court has viewed.

The Fourth Amendment prohibits police officers from unreasonably withholding access to care for an arrestee's medical needs. *See Horton v. Pobjecky*, 883 F.3d 941, 953 (7th Cir. 2018); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Plaintiff has to show that Defendants'

response to his medical needs was objectively unreasonable, and that Defendants' response caused harm. *Horton*, 883 F.3d at 953. Four factors inform whether an officer's response to an arrestee's medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Ortiz*, 656 F.3d at 530. Upon consideration of these factors, as explained below, the Court agrees with Defendants – Plaintiff has failed to point to any evidence upon which a reasonable jury could find that Defendants acted unreasonably under the circumstances.

There is simply no evidence of record tending to suggest that Plaintiff's injuries were so obvious that Defendants must have noticed an unspoken need for medical attention. By Plaintiff's own account, his injuries consisted of bruises on his head and soreness on his butt cheeks and back, and nothing more; he denied even any bleeding. The photographs confirm this description as they show only redness and minor shallow scrapes. While these injuries may have caused some discomfort, there is no evidence that the injuries appeared particularly serious at the time of Plaintiff's encounter with Defendants. *See, e.g., Pinkston v. Madry,* 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek not serious medical conditions); *Davis v. Jones,* 936 F.2d 971, 972-73 (7th Cir. 1991) (scraped elbow and small cut to temple not serious medical conditions); *Harris v. Vance*, No. 18-CV-803-JPS, 2019 WL 3804705, at *2 (E.D. Wis. Aug. 13, 2019) (back and neck pain, and scratches on arm caused by car crash not a serious medical condition); *see also, e.g., Hill v. Crum*, 727 F.3d 312, 319 (4th Cir. 2013) (*de minimis* injuries include bruising, swelling, back and shoulder aches of limited duration, and hairline fracture requiring little medical treatment and no pain medication); *Arum v. Miller*, 331 F. Supp. 2d 99, 111 (E.D.N.Y. 2004) (scratches and bruises on an arrestee following altercation with police found to not be a serious

medical condition). Rather, Plaintiff exhibited the types of superficial bumps, redness, and scrapes one would expect after having been in an altercation and for which a non-incarcerated person likely would not seek immediate medical care. Indeed, at his deposition, Plaintiff himself scoffed at the notion of seeing a doctor merely "for bruises". And it is undisputed that Plaintiff did not make any verbal request for medical treatment to Defendants to otherwise put them on notice that he *needed* medical care. *Harris*, 2019 WL 3804705, at *2 (defendant officers not liable for pretrial detainees' denial of medical attention where detainee's complaints of pain were out of earshot of defendants).

Plaintiff repeatedly characterizes this case as one for the failure to provide medical care. The mere failure to provide medical care, however, is not the standard by which Defendants' conduct must be measured. Instead, to survive summary judgment, Plaintiff was required to produce evidence showing that Defendants *unreasonably* withheld medical care. *See Ortiz,* 656 F.3d at 530-31. Plaintiff produced no such evidence. *See generally Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010) (explaining that nonmoving party must "present something more than a mere scintilla of evidence . . . or some metaphysical doubt as to the material facts to survive summary judgment") (internal citation and quotation marks omitted). Absent evidence that Defendants knew Plaintiff had an injury requiring medical intervention, Defendants' failure to provide medical care was not unreasonable on the record before the Court.

Because there is no evidence that Defendants' conduct violated the Fourth Amendment, Defendants are entitled to summary judgment in their favor on Plaintiff's claim for denial of medical care. The Court need not address Defendants' qualified immunity argument because there is no evidence Defendants' conduct was constitutionally deficient.

## V. Conclusion

For the reasons stated, Defendants' motion for summary judgment [67] is granted in its entirety. Plaintiff's excessive force and false arrest claims are dismissed without prejudice. His denial of medical care claim is dismissed with prejudice. The Clerk is directed to enter final judgment accordingly.[1] Plaintiff's summary judgment response [100] was improperly docketed as a motion, and the clerk is directed to terminate it as such.

                                                    _____
                                                    Honorable Marvin E. Aspen
                                                    United States District Court Judge

Dated: September 25, 2019

---

[1] If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

    Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).